**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1661-24

RYON GREEN,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

          Submitted November 13, 2025 – Decided February 6, 2026

          Before Judges Mawla and Bishop-Thompson.

          On appeal from the New Jersey Department of Corrections.

          Ryon Green, self-represented appellant.

          Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Eric Intriago, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Ryon Green appeals from the final decision of the New Jersey Department of Corrections (DOC) upholding a disciplinary hearing officer's (DHO) finding of guilt and imposition of sanctions for committing institutional infraction, *.009,[1] possession or misuse of an unauthorized electronic communication device, in violation of N.J.A.C. 10A:4-4.1(a).  We affirm.

We discern the following facts from the record.  On August 28, 2023, Green and another inmate, Robert Stanley, were observed smoking a hand rolled cigarette in the Central Office Headquarters (COHQ) inmate maintenance area.  After the cigarette was confiscated, DOC staff searched the inmate bathroom and discovered a cell phone, four charging cables, five charging blocks, and two lighters.  At that time, Green was assigned to both the Mates Inn culinary detail and the COHQ grounds detail.  Following the discovery, Green, along with seven other inmates assigned to the COHQ detail, were returned to Garden State Correctional Facility.

The confiscated phone was transferred to the Special Investigations Division (SID).  A review of outgoing telephone calls connected to Green and

---

[1]  Generally, DOC inmate disciplinary regulations classify "asterisk offenses" as "prohibited acts considered to be the most serious violations, resulting in the most severe sanctions."  Hetsberger v. Dep't of Corr., 395 N.J. Super. 548, 556 (App. Div. 2007); see also N.J.A.C. 10A:4-4.1(a).

Stanley was conducted. Both Green and Stanley acknowledged discovery of the cell phone in their work area at COHQ; however, they both denied being the owner.

After obtaining a search warrant for the cell phone in September 2023, the SID Technical Services Unit (TSU) conducted a forensic analysis of the device. The SID special investigator received the forensic analysis result, which confirmed "[s]everal texts and social media messaging applications on the device memorialized conversations wherein the user identified themselves as Ryon Green." "Specifically, the Facebook messenger account was logged into username 'Ryon O'Dogg Green,'" which featured a profile photograph of Green.

On April 29, 2024, Green was transported from a halfway house back to Garden State Correctional Facility, where he was placed in "Y-Unit" detention. After the investigation, Green was administratively charged with committing prohibited act *.009 and subsequently served with the disciplinary charge. On October 29, 2024, Green declined to provide a statement, and further declined to receive his Miranda[2] warning on a video recording. The SID found no evidence indicating Stanley used the cell phone.

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-1661-24

Prior to the May 3, 2024 disciplinary hearing, Green entered a plea of not guilty, requested and was granted counsel substitute, and provided a statement. At the disciplinary hearing, Green provided a statement but declined to present any witnesses or to confront any adverse witnesses. Instead, his counsel substitute requested leniency. Following the hearing, in the May 3, 2024 adjudication of disciplinary charge form, the DHO concluded the evidence—the DOC disciplinary report, the DOC special custody report, and Facebook messages log—established Green used the cell phone to post messages on Facebook. The DHO imposed several sanctions because Green was "responsible" for the "setting and circumstances of [his] behavior." Both Green and his counsel substitute acknowledged the information contained in the adjudication charge form accurately reflected the proceedings of the inmate disciplinary hearing.

Green filed an administrative appeal, contending "other profiles were also present on the device" and there was "no substantial evidence to prove" that he physically handled the device. He further argued he was denied due process during the disciplinary proceedings. The GSCF associate administrator denied the appeal, concluding that "[t]he evidence and statements of the case, coupled with the material facts [wer]e found to have merit and support the charge as

4

written."  Green then sought relief from the Governor's office, which subsequently referred the matter to the DOC.

On September 16, 2024, the DOC rescinded the May 3, 2024 decision and ordered a new hearing.  At the rehearing, Green reaffirmed his plea of not guilty and was again represented by a counsel substitute, who renewed the request for leniency.  Nevertheless, Green once again chose not to present any witnesses or confront any adverse witnesses.  In his statement, Green maintained he never used the cellphone.

In the October 10, 2024 adjudication of disciplinary charge form, a different DHO determined the charge was supported by all the evidence and Green had been afforded due process.  The evidence presented at the rehearing was an image of the Facebook messages log showing the name "Ryon O'Dogg Green" as either the sender or receiver of messages.  The DHO imposed several sanctions consisting of the loss of various privileges, citing Green's failure to take responsibility for his actions and his lack of "regard for the rules."  Green and his counsel substitute again acknowledged the information contained on the adjudication form accurately reflected the events that transpired at the disciplinary hearing.

A-1661-24

The same day, Green appealed from the disciplinary decision, asserting he was not afforded due process and the Facebook account was not created or used by him. On November 27, 2024, the assistant superintendent upheld the DHO's decision, concluding the sanctions were appropriate after reviewing the evidence. The assistant superintendent also denied Green's request to suspend the sanctions, noting Green had the "responsibility to know and abide by the rules, procedures[,] and policies concerning the operation of the correctional facility."

On appeal, Green raises the following arguments:

> POINT ONE - THE DHO'S GUILTY FINDING, AND THE ADMINISTRATION'S DECISION TO UPHOLD THE GUILTY FINDING, WAS ARBITRARY, CAPRICIOUS, AND UNREASONABLE, AS IT WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE RECORD.
>
> POINT TWO – [GREEN]'S RIGHT TO DUE PROCESS WAS VIOLATED IN NUMEROUS RESPECTS.
>
> A. THE DHO DENIED [GREEN]'S REQUEST TO REVIEW ALL EVIDENCE RELATED TO THE ALLEGATIONS MADE AGAINST HIM.
>
> B. [GREEN] WAS DENIED DUE PROCESS WHEN THE DHO DISREGARDED HIS REQUEST FOR CONFRONTATION.

A-1661-24

Our role in reviewing a prison disciplinary decision is limited. Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). We do not perform a perfunctory review of the agency's findings but engage in a careful and principled examination. Williams v. Dep't of Corr., 330 N.J. Super. 197, 203-04 (App. Div. 2000).

On appeal, the judicial role in reviewing all administrative action is generally limited to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

A reviewing court "may not substitute its own judgment for the agency's, even though the court might have reached a different result." Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 238-39 (App. Div. 2019) (quoting In re Stallworth, 208 N.J. at 194).

We review agency decisions under an arbitrary and capricious standard. Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019);

7

see <u>Melnyk v. Bd. of Educ. of Delsea Reg'l High Sch. Dist.</u>, 241 N.J. 31, 40 (2020). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" <u>Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 219 N.J. 369, 380 (2014) (quoting <u>Russo v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 206 N.J. 14, 27 (2011)).

Green contends the DOC's final determination was arbitrary, capricious, and unreasonable because it was based on insufficient evidence—specifically, a Facebook account displaying the name of "Ryon O'Dogg Green." He further contends his request to review any evidence related to the cell phone and its existence was improperly denied. In support of these arguments, Green relies on unpublished appellate decisions, contending the mere presence of a Facebook account bearing his name and profile picture on the prohibited cell phone does not constitute substantial evidence to support the disciplinary violation. However, pursuant to <u>Rule</u> 1:36-3, unpublished decisions do not constitute binding authority on this court.

A disciplinary hearing officer's decision that an inmate is guilty of a prohibited act must be based on substantial evidence in the record. <u>Figueroa</u>, 414 N.J. Super. at 191. "Substantial evidence means such evidence as a

8

reasonable mind might accept as adequate to support a conclusion." Id. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961) (internal quotation marks omitted)).

Moreover, inmate discipline may be based on actual or constructive possession. See State v. Morrison, 188 N.J. 2, 14 (2006) (defining the "three distinct forms of possession, actual, constructive, and joint"); State v. Zapata, 297 N.J. Super. 160, 177 (App. Div. 1997). Constructive possession does not require physical control of an item; it is established when, even in the absence of direct proof of custody, the circumstances allow a reasonable inference that the inmate was aware of the contraband and intended to exercise control or dominion over it. Figueroa, 414 N.J. Super. at 192; State v. $36,560.00 in U.S. Currency, 289 N.J. Super. 237, 260-61 (App. Div. 1996).

Even if the DHO's determination of guilt for prohibited act *.009 rests on circumstantial evidence—the Facebook messages log, username, profile photograph, and Green's physical proximity, through Green's work detail assignment, to the area in which the cell phone was discovered—there must nonetheless be a rational basis in the record to support the finding. Figueroa, 414 N.J. Super. at 192. This circumstantial evidence reasonably supports an inference Green had knowledge and control of the cell phone where he worked

A-1661-24

at the time of its discovery, even in the absence of direct evidence of physical use. Ibid.; Morrison, 188 N.J. at 14. Further, it was reasonable for the DHO to infer Green either used or constructively possessed the cell phone, given the cell phone and Facebook messages, presence of Green's name, profile picture, login credentials, and communications activity associated with the Facebook account on the device. See N.J.A.C. 10A:4-9.15(a); Figueroa, 414 N.J. Super. at 192; Morrison, 188 N.J. at 14.

Green next argues he was deprived of procedural due process in both the initial hearing and the rehearing. He contends he was denied any opportunity to formulate a defense because he was not afforded his right to review custody reports, summary reports, the incident report, or any other investigative reports. Green argues he was left with only his not guilty plea as a defense.

The limited due process rights to which inmates charged with disciplinary infractions are entitled were first enumerated by our Supreme Court in Avant v. Clifford, 67 N.J. 496, 522-32 (1975), and are codified in the DOC regulations, N.J.A.C. 10A:4-9.1 to .28. In a disciplinary proceeding, an inmate is not entitled to "the full panoply of rights" afforded to a defendant in a criminal prosecution. Avant, 67 N.J. at 522 (quoting Morrissey v. Brewer, 408 U.S. 471, 480 (1972)). An inmate is entitled to written notice of the charges at least twenty-four hours

A-1661-24

prior to the hearing; an impartial tribunal; a limited right to call witnesses and present documentary evidence; a limited right to confront and cross-examine adverse witnesses; a right to a written statement of the evidence relied upon and the reasons for the sanctions imposed; and, where the charges are complex, the inmate is permitted the assistance of a counsel substitute. Id. at 525-38.

We note the initial decision was rescinded after further review by the DOC. Accordingly, we address only Green's due process arguments concerning the rehearing and the subsequent appeal.

Upon review of the record, we are satisfied Green was afforded each of the procedural due process rights articulated in Avant. Id. at 525-38; see also N.J.A.C. 10A:4-9.2, .5, .6, .12, .13, .14, .15. Here, the Facebook messenger details and Green's statement were part of the record considered by the DHO in finding Green possessed the cell phone. He was not prejudiced or deprived of a fundamentally fair hearing, as the key evidence supporting charge—the display of the Facebook message—was included in the record on rehearing and provided a substantial, independent basis for inferring Green misused and constructively possessed the cell phone. We note the SID report detailing the investigation is precluded from disclosure because SID investigation records and reports are designated as confidential records. See N.J.A.C. 10A:22-2.3(a)(2). Even if

A-1661-24

Green had been granted access to the physical cell phone, there is no indication that such evidence would have undermined the outcome or meaningfully altered the DHO's decision.

Green offered no evidence to corroborate his disavowing of ownership of the cell phone beyond merely asserting such claims. He neither challenged nor presented contradictory evidence at the hearing. Additionally, he declined to call or confront any witnesses. Thus, Green's argument is unsupported by the record and contravenes his express acknowledgment on the adjudication form attesting to the accuracy of the disciplinary hearing.

In regard to the administrative appeal of the rehearing, Green asserts the assistant superintendent impeded his efforts to review the evidence, referencing the administrator's stated explanation for upholding the disciplinary decision, which stated: "Sanctions administered by the [h]earing [o]fficer are appropriate for prohibited act(s) *.009. After review of [Green]'s disciplinary history and submitted custody reports; request for a violation of standards, misinterpretation of the facts, that the sanction imposed be suspended are denied."

This explanation does not lend support to Green's argument. N.J.A.C. 10A:4-11.5(a) requires a hearing officer's decision to be upheld unless "procedural safeguards . . . were not followed, . . . new evidence . . . is revealed[,]

. . . the sanction [imposed] is disproportionate to the offense[,]" or "the evidence does not support the findings of the . . . [h]earing [o]fficer but would support . . . a lesser offense than . . . was charged."  Green has not demonstrated the assistant superintendent did not apply the proper standard in reviewing his appeal or the required procedural safeguards were not followed.

Green has not met his burden to show the DOC's decision was arbitrary, capricious, or unreasonable.  We are convinced the DOC's decision is supported by sufficient credible evidence as a whole.  R. 2:11-3(e)(1)(D).  To the extent any argument raised by Green has not been addressed, it is because the argument lacks sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division